# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| PATRICK BILLS, JUMOKA JOHNSON, DONNA KIJEK, and JODI LUCHETTA, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-557 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **Jury Trial Demanded** |
| v. | |
| ALLIED INTERSTATE, LLC, | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Patrick Bills is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Jumoka Johnson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Donna Kijek is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Plaintiff Jodi Luchetta is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

8. Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

9. Defendant Allied Interstate, LLC ("Allied") is a foreign corporation with its principal place of business located at 12755 Highway 55, Suite 300, Plymouth, MN 55441.

10. Allied does substantial business in Wisconsin and maintains a registered agent for service of process at CT Corporation System, 301 South Bedford Street, Suite 1, Madison , WI 53703.

11. Allied is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

12. Allied is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

13. Allied is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

# FACTS

## *Facts Related to Plaintiff Bills*

14. On or about May 23, 2018, Synchrony Bank mailed Plaintiff Bills a billing statement regarding a "Lowe's" store-branded credit card with an account number ending in 2688. A copy of this account statement is attached to this Complaint as <u>Exhibit A</u>.

15. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred for personal, family, or household purposes, including purchases of household goods from Lowe's stores.

16. <u>Exhibit A</u> contains the following representation:

| Payment Information | |
|---|---|
| New Balance | $1,080.37 |
| Amount Past Due | $110.38 |
| Total Minimum Payment Due | $196.64 |
| Payment Due Date | 06/15/2018 |

17. <u>Exhibit A</u> states that, as of May 23, 2018, Plaintiff's alleged Lowe's credit card account had a "New Balance" of $1,080.37, with an "Amount Past Due" of $110.38, a "Total Minimum Payment Due" of $196.64," and a "Payment Due Date" of June 15, 2018.

18. On or about June 9, 2018, Synchrony mailed a debt collection letter to Plaintiff regarding the same Lowe's credit card with an account number ending in 2688. A copy of this letter is attached to this Complaint as <u>Exhibit B</u>.

19. <u>Exhibit B</u> states that "$110.38 is the AMOUNT NOW DUE."

20. The "AMOUNT NOW DUE" stated in <u>Exhibit B</u> is the "Amount Past Due" stated in <u>Exhibit A</u>.

3

21.     On or about June 22, 2018, Synchrony mailed Plaintiff Bills a credit card account statement regarding the same Lowe's credit card with an account number ending in 2688. A copy of this account statement is attached to this Complaint as Exhibit C.

22.     Exhibit C contains the following representations:

| Payment Information | |
|---|---|
| New Balance | $1,159.50 |
| Amount Past Due | $196.64 |
| Total Minimum Payment Due | $289.93 |
| Payment Due Date | 07/15/2018 |

23.     Exhibit C states that, as of June 22, 2018, Plaintiff's alleged Lowe's credit card account with an account number ending in 2688 had a "New Balance" of $1,159.50, with an "Amount Past Due" of $196.64, a "Total Minimum Payment Due" of $289.93," and a "Payment Due Date" of July 15, 2018.

24.     On or about June 25, 2018, Allied mailed Plaintiff Bills a debt collection letter regarding the same Lowe's credit card with an account number ending in 2688. A copy of this letter is attached to this Complaint as Exhibit D.

25.     Upon information and belief, Exhibit D is a form letter, with the information specific to Plaintiff inserted by computer.

26.     Upon information and belief, Exhibit D was the first letter Defendant sent to Plaintiff regarding this alleged debt.

27.     Exhibit D contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

4

28. <u>Exhibit D</u> also includes the following representations:

> Re: Lowe's® Consumer Credit Card Account
> Creditor: Synchrony Bank   Account No. *************2688
> Total Account Balance: $1,159.50
> Amount Now Due: $289.93
> Reference No.: ▓▓▓▓▓▓▓▓8132

29. <u>Exhibit D</u> states that, as of June 25, 2018, the alleged debt had a "Total Account Balance" of $1,159.50 and an "Amount Now Due" of $289.93.

30. <u>Exhibit D</u> states that the "Amount Now Due" is the "Total Minimum Payment Due" stated in <u>Exhibit C</u>.

31. There is a difference between the "Amount Past Due" and the "Total Minimum Payment Due." The "Total Minimum Payment Due" is the sum of the "amount past due" and the minimum payment, which is not itself due until the "Payment Due Date."

32. It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."

33. Thus, under *Barnes*, Allied cannot attempt to collect portions of the balance that are "owed" to Synchrony but are not yet "due." *Barnes*, 493 F.3d at 840 ("only the past due amount, the amount owed [to the debt collector], can be the amount of the debt …."); *see also* 15 U.S.C. § 1692e(2)(a) (prohibiting misrepresentations about the legal status of a debt).

34. Upon information and belief, the purpose of Allied's conduct – attempting to collect the "Total Minimum Payment Due" rather than the "Amount Past Due" – is to increase its profits under false pretenses.

5

35. Upon information and belief, Allied, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered. *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.")

36. Upon information and belief, if a consumer pays Allied an amount greater than the "Amount Past Due," Allied is still entitled to retain a portion of that recovery.

37. Plaintiff Bills was misled and confused by Exhibit D.

38. The unsophisticated consumer would be misled and confused by Exhibit D.

### *Facts Related to Plaintiff Johnson*

39. On or about April 18, 2018, Allied mailed Plaintiff Johnson a debt collection letter regarding an alleged debt owed to Synchrony. A copy of this letter is attached to this Complaint as Exhibit E.

40. Upon information and belief, the alleged debt referenced in Exhibit E was incurred by use of a store-branded credit card, used exclusively for personal, family, and household purposes.

41. Upon information and belief, Exhibit E is a form letter, with the information specific to Plaintiff Johnson inserted by computer.

42. Upon information and belief, Exhibit E was the first letter Defendant sent to Plaintiff Johnson regarding this alleged debt.

43. Exhibit E contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

44. Exhibit E also states:

> As of the date of this letter, the Total Account Balance is $4,267.57 and the Amount Now Due is $624.00. Because the creditor continues to assess interest and late fees on the debt, the amount due on the day you pay may be greater. Hence, if you pay the Total Account Balance shown above, and adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance.

45. By listing both an "Amount Now Due" and stating: "if you pay the Total Account Balance shown above, and adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance," Exhibit E is unclear whether Allied is collecting the "Total Account Balance" or just the "Amount Now Due."

46. It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." Whichever number Allied is truly collecting, it need only state that amount in the letter.

47. The different amounts on Exhibit E render Exhibit E confusing to the unsophisticated consumer, who would not be able to determine, or would be confused as to, which amount Allied was actually attempting to collect.

7

48. Plaintiff Johnson was misled and confused by Exhibit E.

49. The unsophisticated consumer would be misled and confused by Exhibit E.

### *Facts Related to Plaintiff Kijek*

50. On or about August 23, 2018, Allied mailed Plaintiff Kijek a debt collection letter regarding an alleged debt owed to Synchrony. A copy of this letter is attached to this Complaint as Exhibit F.

51. Upon information and belief, the alleged debt referenced in Exhibit F was incurred by use of a store-branded credit card, used exclusively for personal, family, and household purposes.

52. Upon information and belief, Exhibit F is a form letter, with the information specific to Plaintiff Kijek inserted by computer.

53. Upon information and belief, Exhibit F was the first letter Defendant sent to Plaintiff Kijek regarding this alleged debt.

54. Exhibit F contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

55. Exhibit F also states:

> As of the date of this letter, the Total Account Balance is $1,313.56 and the Amount Now Due is $293.00. Because the creditor continues to assess interest and late fees on the debt, the amount due on the day you pay may be greater. Hence, if you pay the Total Account Balance shown above, and adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance.

56. By listing both an "Amount Now Due" and stating: "if you pay the Total Account Balance shown above, and adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance," Exhibit F is unclear whether Allied is collecting the "Total Account Balance" or just the "Amount Now Due."

57. Plaintiff Kijek was misled and confused by Exhibit F.

58. The unsophisticated consumer would be misled and confused by Exhibit F.

### *Facts Related to Plaintiff Luchetta*

59. On or about November 10, 2018, Allied mailed Plaintiff Luchetta a debt collection letter regarding an alleged debt owed to Synchrony. A copy of this letter is attached to this Complaint as Exhibit G.

60. Upon information and belief, the alleged debt referenced in Exhibit G was incurred by use of a store-branded credit card, used exclusively for personal, family, and household purposes.

61. Upon information and belief, Exhibit G is a form letter, with the information specific to Plaintiff Luchetta inserted by computer.

62. Upon information and belief, Exhibit G was the first letter Defendant sent to Plaintiff Luchetta regarding this alleged debt.

63. Exhibit G contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

9

64. <u>Exhibit G</u> also states:

As of the date of this letter, the Total Account Balance is $2,590.68 and the Amount Now Due is $268.00. Because the creditor continues to assess interest and late fees on the debt, the amount due on the day you pay may be greater. Hence, if you pay the Total Account Balance shown above, and adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance.

65. By listing both an "Amount Now Due" and stating: "if you pay the Total Account Balance shown above, and adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance," <u>Exhibit G</u> is unclear whether Allied is collecting the "Total Account Balance" or just the "Amount Now Due."

66. Plaintiff Kijek was misled and confused by <u>Exhibit G</u>.

67. The unsophisticated consumer would be misled and confused by <u>Exhibit G</u>.

### ***The FDCPA***

68. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'"); *quoting Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that

10

violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

69. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

11

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

70. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

71. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

72. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

73. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

74. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, chare, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

75. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

76. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

77. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

### *The WCA*

78. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

79. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country,"

13

and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

80. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

81. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

82. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

83. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

84. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court

14

analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

85. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

86. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

87. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

88. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

89. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

90. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

91. Count I is brought on behalf of Plaintiff Bills.

92. By listing the minimum payment due at the conclusion of the next billing cycle as the "Amount Now Due," Exhibit D includes false, deceptive, and misleading representations

15

which misrepresent the amount Allied and Synchrony are legally entitled to seek from Plaintiff, as well as the legal status of Plaintiff's alleged debt.

93. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

94. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

95. Count II is brought on behalf of Plaintiff Bills.

96. By listing the minimum payment due at the conclusion of the next billing cycle as the "Amount Now Due," Exhibit D includes false, deceptive, and misleading representations which misrepresent the amount Allied and Synchrony are legally entitled to seek from Plaintiff, as well as the legal status of Plaintiff's alleged debt.

97. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III - FDCPA

98. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

99. Count III is brought on behalf of Plaintiffs Johnson, Kijek, and Luchetta.

100. By listing both an "Amount Now Due" and stating: "if you pay the Total Account Balance shown above, and adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance," Exhibits E-G are unclear whether Allied is collecting the "Total Account Balance" or just the "Amount Now Due."

101. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT IV – WCA

102. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

103. Count IV is brought on behalf of Plaintiffs Johnson, Kijek, and Luchetta.

104. By stating: "if you pay the Total Account Balance shown above, and adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance," Exhibits E-G attempt to collect an amount which it is not legally authorized to collect.

105. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

106. Plaintiffs bring this action on behalf of two classes

107. Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit D to the complaint in this action, (c) seeking to collect a credit card account debt owed to Synchrony Bank, (d) which debt was incurred for personal, family, or household purposes (e) between April 17, 2018 and April 17, 2019, inclusive, (f) that was not returned by the postal service. Plaintiff Bills is the proposed representative for Class I.

108. Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibits E-G to the complaint in this action, (c) seeking to collect a credit card account debt owed to Synchrony Bank, (d) which debt

17

Case 2:19-cv-00557-LA   Filed 04/17/19   Page 17 of 19   Document 1

was incurred for personal, family, or household purposes (e) between April 17, 2018 and April 17, 2019, inclusive, (f) that was not returned by the postal service. Plaintiffs Johnson, Kijek, and Luchetta are the proposed representatives for Class II.

109. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

110. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

111. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

112. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

113. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

114. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 17, 2019

                                      **ADEMI & O'REILLY, LLP**

                    By:    /s/ Mark A. Eldridge
                           John D. Blythin (SBN 1046105)
                           Mark A. Eldridge (SBN 1089944)
                           Jesse Fruchter (SBN 1097673)
                           Ben J. Slatky (SBN 1106892)
                           3620 East Layton Avenue
                           Cudahy, WI 53110
                           (414) 482-8000
                           (414) 482-8001 (fax)
                           jblythin@ademilaw.com
                           meldridge@ademilaw.com
                           jfruchter@ademilaw.com
                           bslatky@ademilaw.com